## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **JORDAN ANDERSON**, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. 3:24-cv-00200 |
| v. | |
| **BAUER BUILT INC., d/b/a BAUER BUILT TIRE & SERVICE**, | |
| Defendant. | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Jordan Anderson ("Plaintiff"), by and through his undersigned counsel, moves the Court for preliminary approval of the class action settlement ("Settlement") reached with Defendant Bauer Built, Inc. d/b/a Bauer Built Tire & Service ("Bauer Built" or "Defendant"). The terms of the class action settlement (the "Settlement") are set forth in the Parties' Settlement Agreement, attached hereto as **Exhibit 1** (the "Settlement Agreement" or "S.A.").

## I.     INTRODUCTION AND BACKGROUND

This case arises from a data security incident affecting personal information maintained by Defendant, a corporation providing products and services related to commercial fleet and agricultural industrial tires. In the ordinary course of its business, Defendant collects and stores personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Personal Information") of its current and former employees and customers, including names, Social Security numbers, government identification numbers, driver's license numbers, state

1

identification numbers, and financial account numbers. *See* Complaint ("Compl.") ¶¶ 13-14, 23.[1]

Between April 16, 2023, and April 21, 2023, Defendant experienced a data security incident that potentially impacted the Personal Information of approximately 4,876 individuals (the "Security Incident").

On March 27, 2024, Plaintiff filed this action in the U.S. District Court for the Western District of Wisconsin on behalf of himself and all others similarly situated. Plaintiff asserts claims for negligence, negligence per se, breach of implied contract, invasion of privacy, unjust enrichment, breach of fiduciary duty, violation of the Wisconsin Deceptive Trade Practices Act, and seeks declaratory relief.

Before filing, Plaintiff's counsel conducted extensive pre-suit investigation into the Security Incident and its impact. After filing, the Parties agreed to explore early resolution and exchanged informal discovery, including data on the scope of the incident and class size.

Following extensive, arm's-length negotiations, the Parties reached an agreement on all material terms. The Parties subsequently worked cooperatively to finalize the Settlement Agreement, notice materials, claim form, and other related documents, and selected a claims administrator.

Pursuant to the Parties' Settlement Agreement, Plaintiff now respectfully requests that this Court: (1) preliminarily approve the Parties' settlement as fair, adequate, reasonable, and within the range of possible final approval; (2) appoint Jordan Anderson as the Settlement Class Representative; (3) appoint Cassandra P. Miller of Strauss Borrelli PLLC as Settlement Class Counsel; (4) provisionally certify the Settlement Class for settlement purposes only; (5) approve

---

[1] Defendant denies any wrongdoing and denies that it has any liability but has agreed to settle the lawsuit on a classwide basis to avoid the burden and expense of litigation without in any way acknowledging fault or liability. The recitation of allegations provided herein are solely for the purposes of approval of the class action settlement.

the Parties' proposed notice program and confirm it is appropriate and satisfies due process; (6) set a date for a final approval hearing; and (7) set deadlines for members of the Settlement Class to submit claims for compensation and to object to or exclude themselves from the settlement.

This memorandum describes in detail the reasons why preliminary approval is in the best interests of the class members and is consistent with Federal Rule 23. As discussed in more detail below, the proposed class should be certified and the settlement preliminarily approved so that notice may issue to the class.

## II.    THE PROPOSED SETTLEMENT

The Settlement Agreement details how to implement the Parties' settlement from beginning to end, including how to define the Settlement Class, the benefits they will receive, the claims process, and how Plaintiff may petition for fees and service awards. Further, the Settlement Agreement resolves all claims and causes of action asserted or that could have been asserted against Defendant in connection with the Security Incident and this Lawsuit, on behalf of Plaintiff and a nationwide class of individuals potentially affected by the Security Incident.

### A.  The Settlement Class

The Settlement Agreement defines the Settlement Class as :

> All individuals residing in the United States whose PII/PHI was
> compromised in the Data Breach discovered by Bauer in April 2023,
> including all those individuals who received notice of the breach

S.A. ¶ 36. The Settlement specifically excludes: (i) Defendant, its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge. *Id*. ¶ 58.

**B. The Settlement**

The Settlement establishes excellent and timely benefits for all Approved Claims. Under the Settlement, Defendant shall pay for all valid claims in full, with no limit or aggregate liability cap. The Settlement provides the following benefits to all Settlement Class Members who submit a valid claim:

### 1. Cash Benefits

The Settlement provides Settlement Class Members with the opportunity to claim monetary benefits, including reimbursement for "Ordinary Losses," "Extraordinary Losses," and lost time, or alternatively, elect a cash payment in lieu of these benefits. S.A. ¶ 43.

> **Ordinary Losses and Lost Time**: Settlement Class Members may claim up to $500 for documented losses resulting from the Security Incident, such as identity theft, fraud, and costs spent mitigating those risks. *Id*. They can also claim "lost time" for dealing with the breach, at $25/hour for up to four hours. *Id*.

> **Extraordinary Losses**: Settlement Class Members may claim up to $5,000 for documented, unreimbursed economic losses arising from identity theft, fraud, or similar misuse of their Personal Information, provided the following conditions are met: (a) the loss is an actual, unreimbursed monetary loss arising from identity theft, fraud, or similar misuse, supported by documentation; (b) the loss from identity theft, fraud, or misuse was more likely than not caused by the Security Incident; (c) the actual identity theft, misuse, or fraud loss is not already covered by the ordinary loss compensation; (d) the claimant made reasonable efforts to avoid the loss or seek reimbursement for the loss, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance; and (e) the actual misuse or fraud loss occurred between April 16, 2023, and the close of the Claims Period. *Id*.

> **Alternative Cash Payment**: As an alternative to submitting claims for out-of-pocket losses and lost time, Settlement Class Members may elect to receive a $45 cash payment by submitting a claim and attesting that they believe they experienced harm associated with the Security Incident.

### 2. Credit Monitoring

In addition to reimbursement for financial and time-related losses, Plaintiff also secured substantial credit monitoring and identity restoration services for the Settlement Class. All

Settlement Class Members may submit a claim to receive two years of credit monitoring services at no cost, which includes up to $1 million in fraud insurance coverage for those who enroll. *Id.*

### 3. Equitable Relief

Finally, Defendant has represented that it has made certain security changes in response to the Security Incident.  Defendant paid for those changes separate and apart from other settlement benefits. S.A. ¶ 44.

### 4. Release

The release in this case is tailored to the claims that have been plead or could have been plead in this case. *See* S.A. ¶¶ 65-66. Class Members who do not exclude themselves will release any and all claims arising from the Security Incident and/or the recordkeeping or data security practices in place at the time of the Security Incidents. *Id.*

## C. Notice and Settlement Administration

After gathering competitive bids, the Parties agreed, subject to Court approval, to use Simpluris as the Settlement Administrator in this case. Miller Dec. ¶ 8. The proposed Notice Plan ensures that Settlement Class Members receive direct and effective notice of the Settlement and their rights. The notice process includes both direct mail and an online settlement website, designed to satisfy due process and provide clear instructions on how to participate in the Settlement.

### 1. Timing of Notice

Within fifteen (15) days after entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator with the Settlement Class List. S.A. ¶¶ 51.  Within thirty (30) days after entry of the Preliminary Approval Order, the Settlement Administrator will mail the Short Form Notice to Settlement Class Members for whom valid mailing addresses are

available. S.A. ¶¶ 51-52. The Settlement Administrator will also make the Long Form Notice and Claim Form available on the Settlement Website. *Id.*

### 2. *Form and Method of Notice*

Notice will be provided via postcard through First Class U.S. Mail and will include a tear-off claim form for electing the Alternative Cash Payment. S.A. ¶52.  Claims for reimbursement of Ordinary Losses, Extraordinary Losses, or Lost Time must be submitted separately with any required supporting documentation. *Id*.

Both the Long Form Notice and Short Form Notice, attached to the Settlement Agreement at Exhibits B and C, respectively, are clear and concise. They inform Class Members of the material terms of the Settlement Agreement, advise them of their eligibility for compensation, provide descriptions of the claims process, and explain the various options available to Class Members, which include making a claim, requesting exclusion, and making an objection to the Settlement Agreement. S.A. Exs. B and C. The Notices also provide information regarding the requested attorneys' fees, costs, and service awards, and provide contact information for counsel and the Settlement Administrator should any Class Member wish to get any additional information about the Settlement. Id.

If needed, a "Reminder Notice" will be sent to Class Members who have not yet submitted a claim under the Settlement by the Settlement Administrator sixty (60) days after the Notice Deadline. S.A. Pg. 20. The Reminder Notice will include the same information as what has been provided in the original Short Form Notice.

In addition to mailed notice, the Long Form Notice, Claim Form, and other key documents will be available on the Settlement Website. S.A. ¶53.  Proof copies of the Notice materials will be provided to the Parties for review prior to mailing. The Settlement Administrator will make

reasonable efforts to re-mail notices returned as undeliverable, including address updates through skip tracing.

### 3. *Settlement Website and Contact Information*

The Settlement Administrator will establish and maintain a dedicated Settlement Website prior to mailing notice. S.A. ¶53. The Website will include the Long Form Notice, Claim Form, Settlement Agreement, Preliminary Approval Order, motions for attorneys' fees and final approval, and other relevant documents. *Id.* The Website will also provide a toll-free number, email address, and mailing address for Settlement Class Member inquiries, and will allow claims to be submitted online. *Id.* The Website will remain active until at least sixty (60) days after all Settlement Payments have been distributed. *Id.*

### 4. *Costs of Notice and Administration*

Defendant will bear the costs of providing Notice and administering the Settlement, separate from the Settlement benefits. S.A. ¶54.

### D. Claims, Exclusion & Objection Procedures

The timeline as set forth in the Settlement Agreement is designed to give Class Members sufficient time to receive Notice, review the relevant documents—including the Plaintiff's motion for attorneys' fees and costs—and to determine what they would like to do.

### 1. *Claims*

Class Members will have until ninety (90) days after the Notice Deadline to complete and submit their Claim Form to the Claims Administrator, either by mail or online. *Id.* ¶¶ 3, 45. The Claim Form, attached to the Settlement Agreement at Exhibit A, is written in plain language to make it easy for Class Members to complete. *Id.,* Ex. A. The Settlement Administrator will be responsible for reviewing the Claim Forms to determine if they are complete and valid. *Id.* ¶ 57. The Settlement Administrator is authorized to determine the validity of any claim. Where a claim

is deemed deficient by the Settlement Administrator, Class Members will have 21 days to cure the deficiencies after receiving notice from the Settlement Administrator. *Id.* ¶ 46.

### 2. *Requests for Exclusion*

To request exclusion from the Settlement, a Class Member must, within 60 days from the Notice Deadline, make their request in writing, including the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement. *Id.* ¶ 55.

### 3. *Objections*

To object to the Settlement, a Class Member must, within 60 days from the Notice Deadline, submit their objection(s) in writing to the Settlement Administrator. *Id.* ¶ 21. The written objection must include: i) the name of the proceedings; (ii) the Settlement Class Member's full name and current mailing address; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) the identity of any attorneys representing the objector; (v) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vi) a list of all other lawsuits (if any) in which the Settlement Class Member or his/her attorney has submitted an objection to a class action settlement within the last three (3) years; and, (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id.* ¶ 56.

The procedures and specific deadlines for filing exclusion requests and objections will be identified in the Short Form Notice directly sent to Class Members and will be described in more detail in the Long Form Notice that will be available to all Class Members on the Settlement Website. *See* S.A. Exs. B, C. The Notices further inform Class Members that the Final Approval Hearing will be their opportunity to appear and have their objections heard. The Notices also

inform Class Members that they will be bound by the Release contained in the Settlement Agreement unless they validly exercise their right to exclusion in a timely manner. *Id.*

### E. Attorneys' Fees, Costs, and Expenses and Service Awards

As part of the Settlement, Defendant has agreed to not oppose an application by Settlement Class Counsel for an award of attorneys' fees and litigation costs in the amount of up to $125,000.00. *Id.* ¶ 70. The Settlement Agreement also provides for a reasonable Service Award to Plaintiff in the amount of $2,500. *Id.* ¶ 68. The service award is meant to compensate Plaintiff for his efforts in the litigation, including maintaining contact with counsel, assisting in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, answering counsel's many questions, and reviewing the Settlement Agreement. Miller Decl. ¶ 9. Plaintiff will seek the Court's approval of the requested attorneys' fees, costs and Service Award prior to the Final Fairness Hearing by way of a separate motion.

## III.    LEGAL STANDARD

Courts review proposed class action settlements using a well-established two-step process. *See* Conte & Newberg, *Newberg on Class Actions*, § 11.25, at 38-39 (4th ed. 2002); *see also In re TikTok, Inc., Consumer Privacy Litigation,* 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021). At the first, preliminary approval stage, the district court must make three essential inquiries.

First, the court must determine whether it "will likely be able" to certify the putative class for purposes of judgment on the proposed settlement. *In re TikTok, Inc., Consumer Privacy Litigation,* 565 F. Supp. 3d at 1083, citing Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *3 (N.D. Ill. July 26, 2011).

Second, the district court must determine whether the proposed settlement is "within the range of possible approval" with regard to the criteria set forth in Rule 23(e)(2). The purpose of

the inquiry is only "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing," *Gautreaux*, 690 F.2d at 621 n.3, "not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards[.]" *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *3. "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l.*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

Finally, if the district court finds that it will likely be able to certify the putative class and that the proposed settlement is within the range of possible approval the court must then direct the plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. Fed. R. Civ. P. 23(e)(1); *In re TikTok, Inc., Consumer Privacy Litigation,* 565 F. Supp. 3d at 1083.

## IV.    ARGUMENT

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). When parties seek preliminary approval of a class action settlement agreement under Rule 23(e), the district court must:  (1) determine whether it will likely be able to certify the putative class for purposes of judgment on the proposed settlement; (2) determine whether the proposed settlement is within the range of possible approval with regard to the criteria set forth in Rule 23(e); and (3) approve the proposed notice plan and direct the plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. *In re TikTok, Inc. Consumer Privacy Litigation*, MDL No. 3948, 2021 WL 4478403, *5 (N.D. Ill. Sept. 30, 2021) (slip op.) (internal citations omitted).

Here, the Class meet the standards for certification; the proposed settlement is an outstanding result for Class Members and well within the range of possible approval; and the notice program proposed by the Parties meets all requirements of due process and Rule 23. Thus, this Court should grant preliminary approval.

### A.    The Court Should Grant Class Certification for Settlement Purposes.

The Parties have agreed that, for settlement purposes only, the Court should make preliminary findings and enter an Order granting provisional certification of the Class and appointing Plaintiff Jordan Anderson ("Representative Plaintiff") and Cassandra P. Miller of Strauss Borrelli PLLC ("Class Counsel") to represent the Class. "The validity of use of a temporary settlement class is not usually questioned." *Newberg*, §11.22. The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved[.]…An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

*Manual for Complex Litigation* (Fourth) § 21.612.

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that has settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened; as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.; see also Fox v. Iowa Health System*, 2020 WL 5678704, at 2 (W.D. Wisc. 2020) (slip copy). Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a national basis—including the record-breaking settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019); *see also, e.g., In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This Class should be similarly certified. *See Herrera v. Wells Fargo Bank, N.A.*, No. SACV 18-332JVS, 2021 WL 3932257, at *12 (C.D. Cal. Jun. 8, 2021) (granting preliminary approval of settlement and finding equitable treatment of class members even where statutory subclass members would receive greater relief than non-statutory subclass members). Here, the Class meets the requirements of Rule 23 and warrants certification.

### 1. *The Class is sufficiently numerous and joinder is impracticable.*

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no bright-line test for numerosity, a

class of forty is generally sufficient." *See Savanna Group, Inc. v. Trynex, Inc.,* 2013 WL 66181,

\*4 (N.D. Ill. 2013). Here, the proposed Class encompasses 4,876 individuals. There is no question

numerosity is satisfied.

### 2. *Questions of law and fact are common to the members of the Settlement Class.*

Commonality is satisfied where common questions are capable of generating "common

answers apt to drive the resolutions of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.*

at 2556; *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (same); *Bauer v. Kraft*

*Foods Global, Inc.,* 277 F.R.D. 558, 562 (W.D. Wis. Feb. 15, 2012) (finding commonality where

central issues were common to whole class).

Here, the questions of law and fact at issue arise from common operative facts—the

circumstances concerning Security Incident—and commonality is satisfied because the

circumstances of each particular Class Member common legal and factual issues with rest of the

class. *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002). The Plaintiff's

claims center on whether Defendant failed to adequately safeguard the records of Plaintiff and

other Class Members. For example, issues common to all class members include:

- Whether Defendant owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding Plaintiff's and Class Members' Personal Information;

- Whether Defendant knew or should have known that it did not employ reasonable measures to keep the Personal Information of Plaintiff and Class Members secure; and

- Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Personal Information had been compromised.

These common questions, and others alleged by Plaintiff in his Complaint, are central to

the causes of action brought here and can be addressed on a class-wide basis because they all tie

back to the same common nucleus of operative facts—the Security Incident and Defendant's data protection measures. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement") Thus, Plaintiff has met the commonality requirement of Rule 23.

### 3. The Claims of the Plaintiff is Typical of the Claims of Class Members.

"Rule 23(a) further requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Spates v. Roadrunner Transportation Sys., Inc.*, 2016 WL 7426134, at *2 (N.D. Ill. 2016). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and…[the] claims are based on the same legal theory." *Id.* (quoting *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, the claims of the Plaintiff and all Class Members arise out of the same course of conduct—that Defendant collected and failed to adequately protect the Class Members' Personal Information—and assert the same theories of liability. As a result, the typicality requirement is satisfied.

### 4. The Class Representative has and will continue to provide adequate representation for Class Members.

The "adequacy" requirement of Rule 23(a) has two components: (1) the representatives must not possess interests which are antagonistic to the interests of the class, and (2) the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation. *In re TikTok, Inc., Consumer Privacy* Litigation, 2021 WL 4478403, at *7 (quoting *CV*

*Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992)); *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993). Here, the Plaintiff and Class Counsel meet the test of adequacy.

First, the Plaintiff's interest is entirely representative of and consistent with the interests of all Class Members: all have had their personal identifying information and personal health information compromised due to the alleged shortfalls in Defendant's computer systems. Plaintiff's pursuit of this matter has demonstrated that he has been, and will remain, zealous advocates for the Class. Thus, Plaintiff has the same interests as the Class, and is (more than) a suitable representative.

Similarly, Class Counsel have regularly engaged in major complex litigation, have extensive experience in class action lawsuits, and indeed, are among the leaders in pursuing complex data breach class actions in Illinois and across the country. *See* Miller Decl. ¶¶ 16-24. Accordingly, Plaintiff and his counsel will adequately represent the Class.

### 5. *The Class Satisfies the Requirements of Rule 23(b).*

#### a. Common questions of law and fact predominate.

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Catholic Healthcare W. v. U.S. Foodservice Inc*., 729 F.3d 108, 118 (2d Cir.2013) (internal quotation marks omitted). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Id.* at 620.

In this case, the key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the Personal Information of Plaintiff and

the Class, and whether Defendant breached that duty. The common questions that arise from Defendant's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case because "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class). Thus, this case meets the requirement of predominance.

b.  <u>A class action is the superior method for resolving these claims.</u>

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only

16

certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of over several thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating millions of individual data breach cases arising out of the *same* Data Incident.

The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Class should be certified for settlement purposes.

### B.    The Settlement Should be Approved as Fair, Reasonable and Adequate.

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.  In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

17

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) citing *In re AT&T*, 270 F.R.D. at 346. "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id.* "If the court preliminarily approves the settlement, the class members are notified." *Id.*

Under Rule 23, the first step in the amended process is a preliminary fairness determination: the new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Rule 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). At preliminary approval, the court looks to determine whether the proposed settlement is "within the range of possible approval." *Bruzek v. Husky Energy Inc*., No. 18-cv-697 (W.D. Wis. Aug. 6, 2021) (slip op.) *citing Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Fed. R. Civ. P. 23(e)(1)(B).

The second step in the process, occurring only after notice has issued to the class, is a final fairness hearing. Fed. R. Civ. P. (e)(2); *see also* Manual for Complex Litigation, § 21.633-34; *In re Northfield Labs.*, 2012 WL 366852, at *5 ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members.").  As explained below, consideration of the relevant factors supports preliminarily approving the Settlement and issuing notice.

### 1.  *The Plaintiff and Class Counsel Have Adequately Represented the Class.*

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex.  *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig*., No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *see also Armstrong*, 616 F.2d at 313. This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. At the outset of their investigation, Class Counsel conducted extensive research regarding the Plaintiff's claims, Defendant, and the Data Incident. Miller Decl. ¶ 4. The culmination of that process led to an agreement by the Parties

to engage in early settlement negotiations. *Id.* ¶ 4. Prior to these arm's length negotiations, Defendant provided information necessary for Class Counsel to fully evaluate the case. *Id*. Even after reaching an agreement on the central terms, the Parties spent weeks fully negotiating the finer points of the Settlement Agreement. *Id*. ¶ 8.  As such and considering Class Counsels' extensive experience in data breach litigation, the Parties were able to carry out settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims.

In addition, the adequacy of representation requirement is satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Class.  *See  G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at \*15-\*16 (N.D. Ill. Aug. 20, 2009).  Here, as discussed *supra*, the Plaintiff's claims are aligned with the claims of the other Class Members.  He therefore has every incentive to vigorously pursue the claims of the Class, as he has done to date by remaining actively involved in this matter since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the settlement agreement.  Miller Decl. ¶ 9.  Further, Plaintiff retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g.*, *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at \*8 (N.D. Ill. June 25, 2018).

In a case where experienced counsel represents the Class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel."  *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 792; *Armstrong*, 616 F.2d at 315 ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.").  Here, Class Counsel believe that the Parties' settlement is fair, reasonable, and adequate, and in the best interests of the

members of the Class. Miller Decl. ¶ 10. Class Counsel also believes that the benefits of the Parties'

settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.*

### 2. The Settlement was Negotiated at Arms'-Length by Vigorous Advocates, and There Has Been No Fraud or Collusion.

"A settlement reached after a supervised mediation receives a presumption of

reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011);

*see also Steele v. GE Money Bank,* No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May

17, 2011), report and recommendation adopted, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D.

Ill. June 1, 2011) ("the involvement of an experienced mediator is a further protection for the class,

preventing potential collusion"); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL

4505169, at *11 (N.D. Ill. Aug. 29, 2016) (similar).[2]

Here, the Agreement resulted from good faith, arms'-length settlement  negotiations.

Miller Decl., ¶¶ 3-8 Prior to settlement discussions, Plaintiff requested and Defendant provided

information necessary for Class Counsel to fully evaluate the case.  *Id.* ¶ 4. At all times, the

settlement negotiations were adversarial, non-collusive, and at arm's length. *Id.* ¶¶ 5-7. Following

agreement on the key terms of the settlement on March 28 2025, the Parties executed a term sheet

but continued to spend several weeks finalizing all settlement terms and documents. *Id.* ¶¶ 7-8.

Accordingly, it is clear that the Parties negotiated their settlement at arm's length and

---

[2] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

absent any fraud or collusion. *See, e.g.*, *Aranda v. Carribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *1 (N.D. Ill. Mar. 2, 2017) (granting preliminary approval to privacy settlement resolved with the assistance of a mediator);  *Steele*, 2011 WL 13266350, at *4 (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by an experienced mediator); *Wright,* 2016 WL 4505169, at * 11 (finding no evidence of fraud or collusion where the parties participated in two prior mediations and engaged in lengthy discovery).  Thus this factor weighs in favor of preliminary approval.

### 3.   The Settlement Provides Substantial Relief for the Class.

The Settlement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees.

"The most important factor relevant to the fairness of a class action settlement is the first one listed:  the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."  *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted).  Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs."  *In re AT&T*, 270 F.R.D. at 347.  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969).  It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich*

*v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

Here, Class Members can claim a substantial straight cash payment of $45 and/or significant cash reimbursements for documented expenses up to $5,000 per person for extraordinary losses, or $500 per person for ordinary losses. Importantly, there is no cap to these claims, meaning Defendant will pay each and every valid claim made.

As such, and as further detailed below, the Settlement should be preliminarily approved with an order directing that Notice be provided to the Class.

### 4. The costs, risks, and delay of trial and appeal favor approval of the Settlement.

The value achieved through the Settlement Agreement here is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiff strongly believes in the merits of his case, he also understands that Defendant will assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiff would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013). Moreover, due to the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in

appeals, which will further increase costs and extend the time until Plaintiff and Class Members can have a chance at relief.

Plaintiff dispute the defenses Defendant is likely to assert, but it is obvious that his likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

## 5. *The method of providing relief is effective.*

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii).  The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold-standard in class member benefits: a combination of relief such that Class Members will have the opportunity to receive some compensation and relief with a simple attestation or by checking a box, and greater compensation by providing documentary evidence. S.A. Ex. A. Class Members will have 90 days from the Notice Deadline to make a claim by submitting their Claim Form either online or via U.S. Mail. *Id.* ¶ 3. The Settlement Administrator will have the authority to assess the validity of the claims, and upon receipt of an incomplete, invalid, or unsigned Claim Form, is required to request additional information and/or documentation and give the Class Member 21 days to cure the defect before rejecting the claim. *Id.* ¶ 46. Claims will be paid within 45 days of the Effective Date. *Id.* ¶ 47. Accordingly, all Class

Members will receive their award with a reasonable amount of time. For these reasons, the means by which the relief will be distributed is fair, efficient, and effective.

### 6. Preliminary Evaluation of the Reasonableness of Attorneys' Fees.

Rule 23(h) authorizes courts to award reasonable attorneys' fees in class actions. See Fed. R. Civ. P. 23(h). In the Seventh Circuit, courts determine reasonableness by referencing the market rate for legal services, taking into account the risk of non-payment and prevailing rates at the time of the award. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). Courts also consider whether the requested fee is reasonable in relation to the value achieved for the class. *Gehrich v. Chase Bank USA*, N.A., 316 F.R.D. 215, 235 (N.D. Ill. 2016) (citing *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014)).

Class Counsel will submit a separate motion for attorneys' fees and costs, as permitted by the Settlement Agreement. S.A. ¶ 70. Notably, the Settlement includes no "clear sailing" provision, and any award will be subject to this Court's independent review for fairness and reasonableness. In addition, Class Members' recovery is not contingent on the fee award and will not be reduced regardless of the amount approved. *Id.*

Courts frequently use the lodestar method—multiplying hours reasonably worked by prevailing market rates—and may apply a multiplier to reflect the risk, complexity, and results achieved. *John v. Advoc. Aurora Health, Inc. (In re Advocate Aurora Health Pixel Litig.)*, 740 F. Supp. 3d 736, 742 (E.D. Wis. 2024); *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 489 (7th Cir. 2009). Multipliers of 1.5 to 4.5 are routinely approved in data privacy cases where litigation risk is high and relief is meaningful. *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 954 (7th Cir. 2019).

To date, Class Counsel has devoted over 91 hours to the case, with a lodestar exceeding $50,000 and $202.80 in reasonable costs. Miller Decl. ¶ 25. Based on the anticipated fee request,

the current lodestar multiplier of approximately 2.5 falls well within the range deemed reasonable in similar cases. *Id*. Moreover, Class Counsel will continue to perform substantial work through final approval and settlement implementation, further reducing the multiplier. *Id*.

Class Counsel are nationally recognized leaders in consumer and data breach litigation and have extensive experience achieving successful results in similar class actions.

Given the substantial risks undertaken, the meaningful relief secured for the Settlement Class, and the continued work ahead, the anticipated fee request is fair, reasonable, and consistent with market standards. It reflects both the effort invested and the significant benefit achieved for thousands of Class Members—without reducing or limiting their recovery in any way.

### 7. *The Settlement Agreement Treats Class Members Equitably to Each Other.*

Here, the proposed Settlement does not improperly discriminate between any segments of the Class. All Class Members are eligible to receive the exact same relief. S.A. ¶ 43. Importantly, direct Notice will be sent to Class Members, and all Class Members will also have the opportunity to object to or exclude themselves from the settlement. And, while Plaintiff will be seeking a $2,500 award for his services on behalf of the Class, this award is significantly less than the amount that any given Class Member can claim in reimbursements and thus does not create an improper motivation to settle or give rise to undue inequities across the classes. Accordingly, this factor also weighs in favor of preliminary approval.

### C.    The Parties' Notice Plan Satisfies the Requirements of Rule 23 and Due Process Requirements.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The notice provisions of Rule 23 were amended because means of communication have evolved, and permitting notice by electronic means, including e-mails, digital media, and social media, may provide the best practicable notice under the circumstances. Duke Law School, *Implementing 2018 Amendments to Rule 23*, Rules Appendix C, at *17-18.23. Specifically, the amended language expressly provides that notice can be made by one or a combination of means, including "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

The Committee Note to amended Rule 23 advises: "Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the 'traditional' methods are best may disregard contemporary communication realities." Duke Law School, *Implementing 2018 Amendments to Rule 23*, Rules Appendix C, at *19. Consistent with that directive, Class Counsel and the Settlement Administrator have carefully considered cost, customer preference, and effectiveness in determining the best practicable means of communicating the settlement benefits and rights of exclusion (among other matters) to the Class.

Here, notice will be provided directly to Class Members via the contact information they provided to Defendant—the same contact information used by Defendant to provide them initial notice of the breach. S.A. ¶ 51. The Settlement Administrator will also create and maintain a Settlement Website where Class Members can view relevant documents, submit their claims, or get answers to frequently asked questions. *Id.* ¶ 53. In addition to the direct Notice and Settlement

Website, the Settlement Administrator will also maintain a dedicated toll-free, live operator help line, to provide Class Members with additional information they may need. *Id.*

Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). This information is included in both the Long Form Notice and Short Form Notice in language that is easy to understand. *See* S.A. Exs. B, D.

Because the Class Notice plan set forth in the Settlement Agreement satisfies the requirements of due process and Federal Rule of Civil Procedure 23, and provides the best notice practicable under the circumstances, the Court should direct the Parties and the Settlement Administrator to proceed with providing notice to Class Members pursuant to the terms of the Settlement Agreement and its order granting preliminary approval.

## V.    <u>CONCLUSION</u>

Plaintiff respectfully requests that this Court (1) conditionally approve the Parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Jordan Anderson as the Class Representative, (3) appoint Plaintiff's counsel as Class Counsel, (4) provisionally certify the Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed notice program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23, (6) set deadlines for Class Members to submit claims for compensation, objections, and requests for exclusion, and (7) set a

date for a Final Approval Hearing.  A proposed Preliminary Approval Order is attached to the Settlement Agreement, at Exhibit C.

Date: May 21, 2025                              Respectfully submitted,

                                    By: */s/ Cassandra P. Miller*
                                         Cassandra P. Miller (Pro Hac Vice)
                                         Andrew G. Gunem (SBN: 1114770)
                                         **STRAUSS BORRELLI PLLC**
                                         One Magnificent Mile
                                         980 N Michigan Avenue, Suite 1610
                                         Chicago IL, 60611
                                         Telephone: (872) 263-1100
                                         Facsimile: (872) 263-1109
                                         cmiller@straussborrelli.com
                                         agunem@straussborrelli.com

                                         *Counsel for Plaintiff and Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Cassandra P. Miller, hereby certify that on May 21, 2025, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record via the ECF system.

DATED this 21st day of May, 2025.

STRAUSS BORRELLI PLLC

By: *<u>/s/ Cassandra P. Miller</u>*
    Cassandra P. Miller
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N Michigan Avenue, Suite 1610
    Chicago IL, 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    cmiller@straussborrelli.com